NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO N.R. and N.R.

No. 1 CA-JV 23-0057
FILED 10-24-2023

Appeal from the Superior Court in Maricopa County
No. JS21058
The Honorable Genene Dyer, Judge *Pro Tempore*

**VACATED AND REMANDED**

COUNSEL

Alongi Law Firm PLLC, Phoenix
By Thomas P. Alongi, Elisabeth Alongi
*Counsel for Appellant*

Czop Law Firm PLLC, Higley
By Steven Czop
*Counsel for Appellee Alexandra D.*

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellee Logan R.*

---

**MEMORANDUM DECISION**

Vice Chief Judge Randall M. Howe delivered the decision of the court, in which Judge Jennifer M. Perkins and Judge Daniel J. Kiley joined.

---

**H O W E**, Judge:

¶1 Kristina M. ("Grandmother") appeals the juvenile court's order denying her petition to terminate the parental rights of Alexandra D. ("Mother") and Logan R. ("Father") to their children. She contends, among other arguments, that the juvenile court erred in finding that Mother's consent to place her children in a guardianship precluded a finding of abandonment and that she did not prove that Mother's chronic substance abuse warranted termination of Mother's rights. We vacate the court's order and remand for further proceedings for two reasons. First, consent to a guardianship does not necessarily negate a finding of abandonment. Second, the court should not have considered the substance abuse ground because Grandmother never alleged that ground in her termination petition.

**FACTS AND PROCEDURAL HISTORY**

¶2 We view the facts in the light most favorable to sustaining the juvenile court's order. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 2 (2016). Mother and Father are the biological parents of a boy born in 2018, and a girl born in 2019. Both parents have histories of substance abuse and domestic violence. Father has been incarcerated several times. He was last incarcerated in July 2020 for driving under the influence and for armed robbery. His expected release date is October 2024. In April 2021, Mother moved to Florida for substance abuse treatment and left the children with Grandmother. She consented to placing the children in a guardianship with Grandmother as their guardian.

¶3 In May 2022, Grandmother petitioned to terminate both Father's and Mother's parental rights to the children. As grounds for termination of Father's parental rights, she alleged abandonment, neglect, and incarceration under A.R.S. § 8–533(B)(1), (2), and (4). As grounds for termination of Mother's parental rights, she alleged abandonment and neglect under A.R.S. § 8–533(B)(1) and (2). To support her neglect allegation, Grandmother argued that Mother had neglected the children

because Mother had abused substances, had been unsuccessful in rehabilitating, and was unable to discharge her parental responsibilities.

¶4            The juvenile court held a termination hearing. Mother failed to appear at the hearing. The expert who Grandmother had hired to conduct a home study testified that grounds existed to terminate Father's and Mother's parental rights. He also testified that termination was in the children's best interests because the parents were not involved with the children, the children were safe in Grandmother's home, and they had permanency with Grandmother. Finally, he testified that Grandmother was willing and able to adopt the children and that adoption would be in the children's best interests. He admitted that his home study rested only on an interview with Grandmother and online research about Father's criminal history. He had not interviewed Father or Mother.

¶5            Grandmother testified that Mother and Father had abandoned the children because, for more than six months, they had failed to maintain a normal parental relationship with the children. They did not send any letters, gifts, or cards to the children. She admitted, however, that the children had not been harmed while in Mother's care. After Mother returned from Florida in August 2022, she saw the children only four times, with the last contact being in December 2022. She also testified that the termination of the parents' parental rights was in the children's best interests because the children would have a stable environment. When asked if she was concerned that Mother would withdraw her consent to the guardianship, Grandmother answered, "No." Finally, she testified that Father had not indicated that he intended to terminate the guardianship.

¶6            Father testified that after his release from incarceration in April 2020, he communicated with Grandmother about once a week to discuss how the children were doing. He could not remember, however, if he had ever asked to see the children. His last contact with the children was in April 2020. While incarcerated, he received updates about the children from Mother via phone calls until she stopped answering his calls. He also said that he has been participating in substance abuse and counseling, domestic violence, and anger management classes. Finally, he testified that he did not intend to terminate the guardianship.

¶7            During the closing argument, Grandmother argued that the court should terminate Mother's parental rights on the abandonment and neglect grounds. As to Father, she argued that his parental rights should be terminated on the abandonment, neglect, and incarceration grounds. The juvenile court found that Grandmother had proved the incarceration and

substance abuse grounds to terminate Father's parental rights, but not the abandonment ground.

**¶8** As to Mother, the court found that Grandmother had not proved grounds for termination. It found that Grandmother did not prove abandonment because Mother had consented to the guardianship "to ensure that Grandmother [had] the legal authority [to] provide for [the children's] medical, educational and financial needs." It also found that Grandmother had not proved chronic substance abuse because Grandmother provided no evidence beyond her testimony about Mother's chronic substance abuse. The court did not address that Grandmother had alleged neglect, not chronic substance abuse, as a ground for termination.

**¶9** The court further found that Grandmother had not shown that termination of either parent's parental rights would be in the children's best interests. The court reasoned that the children "always had a safe and stable home that the parents agree[d] to through their consent to the guardianship" and that no evidence showed imminent disruption of the guardianship. It therefore denied Grandmother's petition for termination. Grandmother timely appealed.

## DISCUSSION

**¶10** Grandmother challenges the juvenile court order to the extent that it found that (1) she did not prove abandonment and chronic substance abuse as grounds to terminate Mother's parental rights, and (2) termination of both parents' parental rights was not in the children's best interests. As to the abandonment ground, she contends that the juvenile court erred in finding that she did not prove abandonment as to Mother solely because Mother had consented to the guardianship. A juvenile court's termination determination is reviewed for an abuse of discretion. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 58 ¶ 9 (App. 2015). We will uphold the court's factual findings "if supported by adequate evidence in the record." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451–52 ¶ 19 (App. 2007) (quoting *State v. Smith*, 123 Ariz. 243, 247 (1979)). "The juvenile court's legal conclusions regarding the statutory ground for termination [] will be affirmed unless they are clearly erroneous." *Brionna v. Dep't of Child Safety*, 533 P.3d 202, 209–10 ¶ 31 (Ariz. 2023).

**¶11** To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one statutory ground under A.R.S. § 8–533, and by a preponderance of the evidence that termination would be in the child's best interests. A.R.S. § 8–533(B); *Jennifer*

*S. v. Dep't of Child Safety*, 240 Ariz. 282, 286 ¶ 15 (App. 2016). One such ground is abandonment, A.R.S. § 8–533(B)(1), which is "the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision." A.R.S. § 8–531(1). A parent's "[f]ailure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment." *Id*.

¶12        In determining abandonment, the court must consider whether a parent has (1) provided reasonable support to the children, (2) maintained regular contact with them, and (3) provided normal supervision. *Kenneth B. v. Tina B.*, 226 Ariz. 33, 37 ¶ 18 (App. 2010). A parent's conduct determines abandonment, not a parent's subjective intent. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 18 (2000). "The burden to act as a parent rests with the parent, who should assert his legal rights at the first and every opportunity." *Id*. at 251 ¶ 25 (citation omitted). When a parent cannot exercise traditional methods to bond with the children, "he must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *Id*. at 250 ¶ 22 (quoting *In re Pima Cnty. Juv. Sev. Action No. S–114487*, 179 Ariz. 86, 97 (1994)).

¶13        The court erred by concluding that Mother's consent to the guardianship alone defeated Grandmother's abandonment claim. A parent cannot avoid a finding of abandonment solely by placing children in a guardianship. *See* A.R.S. § 8–533(A)–(B)(1) (no express prohibition for legal guardians to petition for termination of parental rights). Although the existence of a guardianship is a relevant factor for the court to consider, it is not the only, nor even the most important, factor. *See Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 476–477 ¶¶ 25, 27 (2022). Instead, the court's main focus in analyzing the abandonment ground should be on the parent and her efforts—or lack thereof—to provide reasonable support, regular contact, and normal supervision. *See* A.R.S. § 8–531(1) (Abandonment means "the failure of a *parent* to provide reasonable support and to maintain regular contact with the child, including providing normal supervision." (Emphasis added)). The court here made no other findings.

¶14        Grandmother also argues that the juvenile court erred in finding that she had not proved the chronic substance abuse ground under A.R.S. § 8–533(B)(3) to terminate Mother's parental rights. But, as Mother points out, she never alleged chronic substance abuse as a separate ground for termination. Although Grandmother alleged that Mother had abused substances, had been unsuccessful in rehabilitating, and was unable to

discharge her parental responsibilities, Grandmother did so to support her neglect ground allegation. Thus, the only two grounds Grandmother alleged to terminate Mother's parental rights were abandonment and neglect under A.R.S. § 8–533(B)(1) and (2). Grandmother never moved before or at the termination hearing to amend her petition to allege the chronic substance abuse ground. In fact, during the closing argument, she argued that the court should terminate Mother's parental rights only on the abandonment and neglect grounds. Mother thus did not receive notice about the chronic substance abuse ground and was denied the opportunity to prepare a defense to this ground. *See Roberto F. v. Ariz. Dep't. of Econ. Sec.*, 232 Ariz. 45, 55–56 ¶¶ 45–50 (App. 2013) (finding that the juvenile court erred in allowing amendment of the petition to terminate parental rights on the fourth day of trial). The juvenile court therefore erred in considering a ground not alleged in Grandmother's petition. *See id*. at 55 ¶ 44 ("Adequate notice is a fundamental element of due process.") In doing so, the court further erred in not resolving the neglect ground that Grandmother had alleged in her petition.

¶15 We vacate the juvenile court's order denying Grandmother's petition to terminate Mother's parent rights and remand to allow the juvenile court to reconsider its ruling on the petition under a correct understanding of the applicable law. Because we vacate the juvenile court's order based on the court's error in applying the law on the statutory grounds for termination of Mother's parental rights, we need not—and therefore do not—address whether the juvenile court erred in finding that termination of Mother's parental rights was not in the children's best interests.

¶16 Moreover, the juvenile court's errors in analyzing whether Mother's parental rights should be terminated affected its analysis whether termination of Father's parental rights was in the children's best interests. Whether grounds exist to terminate Mother's parental rights is a factor in determining the best interests analysis as to Father because the termination of Mother's rights affects the children's adoptability, a critical factor in determining best interests. *See Demetrius L.*, 239 Ariz. at 3–4 ¶ 12 (explaining that in determining whether the child will benefit from termination, relevant factors include whether the current placement is meeting the child's needs, an adoption plan is in place, and if the child is adoptable); *see Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98 ¶ 10 (App. 2016) (noting that termination would make the children eligible for adoption, which shows that the children would benefit from the termination). We therefore also vacate the juvenile court's best interests analysis as to the termination of Father's parental rights and remand for further proceedings.

**CONCLUSION**

¶17     We vacate and remand.



AMY M. WOOD • Clerk of the Court
FILED:    AA